Good morning, Your Honor. May it please the Court, Paul Breed, I represent the appellant, Gloria Peterson, in this case which is an interference case arising under the Family and Medical Leave Act. The narrow issue involved in this case involves the scope of permissible argument, final argument during a jury trial. The broader issue involved in this case is the type of conduct by an employer which may trigger liability under the Act. Now, in this case, Ms. Peterson suffered a serious health condition, took medical leave, and while she was on medical leave, her job was abolished. Mr. Breed, can you focus on, I mean, focus on the narrower issue, which really is the broader issue as well? Here's kind of where my problem is, and I just need help on it. There was no objection to the instructions. Your proffered instruction, which just set out the standard negative, a negative factor. Right. Your own proposed instruction was essentially to the same effect. That's right. So there was no proposed instruction that would have set out or defined a but-for cause standard. Well, okay. So then you start your closing argument by outlining Haas's cross-examination. That's right. Admissions for a cause. Right. Then there's an objection. Who knows what the ground was, because it wasn't said. And the Court then interjected a sustain the objection, noting that information gleaned while on leave isn't really the test, and that you ought to be careful where you go with it. Right. And there's no offer of proof after that with respect to how your argument would have differed had that undefined objection been sustained. So I don't understand how this case is in any posture for us to make any kind of substantive decision. Okay. I think that, first of all, you need to look at the colloquy between counsel and court that occurred on the day previous, just after Mr. Haas had given his testimony. During that colloquy, the Court said, Mr. Breed, you want to argue such and such. And in response to that, I said, yes, that's correct, and that's what I do want to argue. There was a kind of a running conversation going on between counsel and the Court throughout the trial. But clearly you could have argued that the information that Haas admitted that he learned, the epiphany that he had while she was on leave, showed that his denial that Leave Act had anything to do with the decision to eliminate her position in the RIF wasn't true. I mean, there would be no problem arguing that. Okay. Post-trial. We filed our motion for a new trial, and we set all of these arguments out. Yeah, I know. And they're all, and it seems to me like it's sort of like a legal argument, that the time to have made the argument that but-for causation is the proper standard was at the instruction stage. Well, we're not saying that that's the legal standard. That's the factual argument that we wanted to make to the jury. That is, we wanted to stand in front of the jury and said, this woman would not have lost her job had she not gone out on medical leave. That's the legal standard set out in the instruction. Well, the ---- It's a negative factor. It didn't say a factor. It said a negative factor.  And as that has been interpreted in this Court's Bockelder decision, what that means, is a factor which ---- You know, you're in a trial. You've got to come up with a set of instructions. Right. And you didn't do that. Huh? Well, I believe we did, Your Honor. Oh, you can't just say you did it because you had a colloquy with the judge, you're going back and forth. I mean, you've got to come up with a set of instructions. Did you come up with an instruction on but-for? No. Okay. We did not ask that the jury be instructed but-for. We asked for the instruction which was taken from the language that this Court used in the Bockelder decision. Now, post-trial, when we filed our new trial motion, we set this all out for the judge. The judge, in response to that, didn't say, well, if you'd brought this before me in a timely fashion, you know, I would have considered it and you didn't do it. What the judge said is that I have heard all of this before, both on and off the record during the trial, and my decision remains as it was, and you have... Maybe it would be helpful if you told us why the argument you were precluded from making would have been a proper argument in light of the instructions that were actually given. Okay. What the instruction was is that an employer may not interfere with an employee's use of FMLA, and that if an employer uses the FMLA leave as a negative factor in decision-making, then you have an interference claim. If the employer used what as a negative factor? Yes. No, used what as a negative factor? The employee's use of medical leave is a negative factor in the employer's decision-making. I'm paraphrasing, obviously. All right. That's part of the problem. Yeah, I think. Anyway, go ahead. So? So. Under that instruction, why was your argument improper? The reason that it was improper is that the employer took the knowledge gained from her medical leave and used it in a way that visited negative consequences upon the employee. And as this Court has used that term in the Bok-Elder decision, and as the district court in this case recognized prior to trial in its decision on the summary judgment motion, that negative factor language equates with a causal relationship between the employee's use of medical leave and the adverse action that is visited upon the employee. But that was the ruling. As I understand the judge, the way the trial judge interpreted that negative factor language was that the taking or the granting of leave had to be a negative factor and not, you know, what the employee discovered during the course of leave. Right. Isn't that the distinction that Judge Stewart made? Well, that is the distinction that she made post-trial. That is not the distinction that she made prior to trial in the written decision on the summary judgment motion. If I could, I'd like to reserve the remainder of my time for rebuttal. Were you arguing that negative factor was limited just to the taking of the leave? Just the taking of the leave? In all sense of the word. And that what about the negative factor that came to mind after the date the leave was taken? Yes, that would trigger liability, just as it did in the Bok-Elder case. That is, and the test here is whether the Employers Act would shill the willingness of an employee to exercise rights under the Family and Medical Leave Act. And if an employee knew that the employer would take this information into account that it gathered as a result of taking the medical leave, employees would be considerably less likely to exercise their rights. Same true for going skiing. Pardon me? Same true for going skiing. Right? I'm not sure. If you're on vacation, if you go on vacation and your employer discovers that your work can be spread out amongst other people, it's the same thing. It has nothing to do with taking the FMLA. It's just when information happens to you. Well, it does, because the employee would not have lost her job if she hadn't taken the medical leave. Or if she hadn't gone skiing. Or if she hadn't. Well, yes, but in the instance of going skiing, there's no statute that protects employees who go skiing. Yes, I know, but it just shows that there's no relationship of the sort that you're positing. Well, I think that cases are pretty consistent in saying that the employee shouldn't be put in either a worse position or a better position by virtue of having gone out on leave. And in this case, what we were saying and what we wanted to argue is that she was in substantially worse position by virtue of having gone out on medical leave. Thank you. All right. May it please the Court. Keith Garza for FLE Tri-County Metropolitan Transportation District of Oregon. Your Honors, I'll be brief. There was a question about who knows the ground for the objection that was made during closing argument that Judge Stewart sustained. And the reason that Judge Stewart did not need any elaboration on TriMet's objection was because of the colloquy that had occurred earlier between counsel. We all knew exactly where the next sentence in the closing argument would go but for the objection. I know. I mean, the next sentence could have been, as the instruction says, it requires a negative, you know, a negative factor. The taking of the leave was a negative factor. And he could have then said, under that instruction, a negative factor can be the admission from Haas that he just, that he learned during her leave that her work could be spread out to others. And you can take that, and that he wouldn't have terminated her if he hadn't have, or he wouldn't have eliminated her position if he hadn't had that epiphany, from which you can reasonably infer, Jury, that he lied when he said that he did not take her leave into account. I mean, that could have been the next sentence. I suspect that wouldn't have been the next sentence, but it could have been. In retrospect, Your Honor, I think that's entirely accurate. I think the expectation was, in light of the colloquy, the next sentence would have been that the instructions tell you it cannot be an adverse negative factor, and this was a negative factor. We wanted to make sure that because the jury instructions, to which no objection had been lodged and to which no exception was taken, talk about using the taking of leave as a negative factor, that any argument during closing would not misconstrue the very plain import of those words. And so what we have here is a district judge's, magistrate judge's, discretionary decision to limit the scope of closing argument to the plain terms of instructions to which no objection was taken to, and whether that was a case of discretion. Are you familiar with the growth case that the Supreme Court recently decided? Perhaps, but not by name. Under the ADEA, involved the question of a jury instruction in an ADEA case. In that case, the Supreme Court said the trial court should have given a but-for instruction because the wording of the Age Discrimination Act is different from Title VII, and the Title VII cases don't control. You know that case? I can tell you that I have skimmed the case only briefly. The reason I ask that is because it seems to me the wording of the FMLA is the same as the AEDA. It knows it says that you can't discriminate, employer cannot discriminate against an individual because, right, such individual has taken leave. And it was used, it's the use of the word because in the ADEA that the Supreme Court said the court should have given a but-for instruction because because means but-for. It's almost what the court said. So under those circumstances, don't you think the plaintiff would have been entitled to a but-for instruction and certainly to make the but-for argument? I would have been happy to have had that discussion with plaintiff's counsel before trial or during trial in this case. Thinking in the abstract. Well, he tried to argue, you know, obviously he tried to make the argument, right? He wanted to make the argument before the jury, I mean. I did not hear but-for from plaintiff's counsel until the motion for new trial. So it was always presented in the terms of the use of the taking of leave and negative factor. The wording that this court is familiar with from its decisions in Batchelder and John Lew. So, you know, if it is to be but-for, I mean, I would be happy to submit a memorandum of additional authority. Well, but your position now, though, is he never raised it. He means plaintiff's counsel never raised it in those terms. I know it's, as far as you're concerned, any argument like that has been waived. It was motion for new trial. Now, there were discussions about the burden of proof and who bore that in a situation in which an employee who was out on FMLA leave had her position eliminated during a legitimate reduction in force. Likewise, there was no instruction submitted to the jury on that issue either. So there were a number of issues that could have been litigated but that were not. I gather both sides both sides agree to the instructions that were submitted. Right. There was no objection. There were joint submissions. The instructions on FMLA. Well, the one that you know, the one I'm focusing on, the negative factor. There's no objection to that. There was there was no objection. Each side submitted slightly different variations on the text. The district court selected one. The only exception that plaintiff took to the instructions had to do with an instruction on serious health condition. And that's something on which she prevailed in the front of the jury. I got you. Thank you. Thank you. Are you rebuttal? I think so. You have 31 seconds. He's over 31. Do I have 31 seconds? It just took a deep breath and you lost it. OK, this is submitted. Thank you. We come to the final matter. Versus Astro.
judges: Pregerson, Rymer, Tashima